Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| DICAMAR CORP., TAMARA L. DÍAZ MARTÍNEZ; JORGE DÍAZ MARTÍNEZ, GLENDA VELÁZQUEZ SANTIAGO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE ELLOS H/N/C CENTRO QUIOPRÁCTICO DÍAZ VELÁZQUEZ; GLADYS DÍAZ MARTÍNEZ H/N/C MASAJE HOLÍSTICO TERAPÉUTICO HEALING TOUCH<br><br>Recurridos<br><br>v.<br><br>RAFISO INVESTMENT, LLC; H. DÍAZ SANTINI & CO., INC.; SUCESIÓN DE CARMEN PARÉS MÁS, COMPUESTA POR SUS HEREDEROS ARTURO ACEVEDO PARÉS, ARTURO RAFAEL ACEVEDO VÁZQUEZ Y JOSÉ MANUEL ACEVEDO VÁZQUEZ; ARTURO ACEVEDO PARÉS; ARTURO RAFAEL ACEVEDO VÁZQUEZ; WILFREDO MARCANO POMALES H/N/C MARCANO'S PIZZA PALACE #6; LONG CONSTRUCTION, INC. O LONG CONSTRUCTION COMPANY; ASEGURADORA XYZ; MENGANO DE TAL; CORPORACIÓN ABC<br><br>Peticionarios | KLCE202500579 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2021CV03943<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## R E S O L U C I Ó N

En San Juan, Puerto Rico, a 4 de agosto de 2025.

Comparece la parte peticionaria, Arturo Acevedo Parés, Arturo Acevedo Vázquez, RAFISO Investment, LLC y Wilfredo Marcano Pomales, mediante el recurso de epígrafe y nos solicita que

Número Identificador

RES2025 _____

revoquemos la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 12 de marzo de 2025. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Moción en Solicitud de Sentencia Sumaria Parcial*, promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

**I**

El 25 de junio de 2021, DICAMAR, Corp.; Tamara L. Díaz Martínez; Jorge Díaz Martínez, Glenda Velázquez Santiago y la Sociedad Legal de Gananciales compuesta por ambos h/n/c Centro Quiropráctico Díaz Velázquez; Gladys Díaz Martínez h/n/c Masaje Holístico Terapéutico Healing Touch (recurridos) incoaron una *Demanda*,[1] posteriormente enmendada,[2] sobre cese y desista, sentencia declaratoria y daños y perjuicios en contra de RAFISO Investment, LLC; H. Díaz Santini & Co., Inc.; Sucesión de Carmen Parés Más compuesta por sus herederos Arturo Acevedo Parés, Arturo Rafael Acevedo Vázquez y José Manuel Acevedo Vázquez; Arturo Acevedo Parés; Arturo Rafael Acevedo Vázquez; Wilfredo Marcano Pomales h/n/c Marcano's Pizza Palace #6; Long Construction, Inc. h/n/c Long Construction Company (peticionarios). Indicaron que la finca número 2,269 sita en Caparra Terrace fue adquirida por Fernando Díaz Canales y María E. Martínez Reyes y consta de un edificio de tres plantas de uso comercial. Detallaron que dicho inmueble, en el cual operaban negocios como el Centro Quiropráctico Díaz Velázquez y el Masaje Holístico Terapéutico, era administrado por DICAMAR. Por otro lado, señalaron que en el local número 1274 de la Avenida Central, perteneciente a Arturo Acevedo Parés y a Arturo Rafael Acevedo

---

[1] Apéndice del recurso, págs. 1-20.
[2] Íd., págs. 55-75.

Vázquez, operaba el negocio Marcano's Pizza Palace #6, administrado por Wilfredo Marcano Pomales. Describieron que, detrás de dicho local, había un predio destinado a estacionamiento de vehículos, perteneciente a Long Construction.

Los recurridos alegaron en la acción de epígrafe que, desde el año 2012, la Sucesión Parés Más instaló verjas de alambre y un portón en uno de los lotes en controversia, limitando así el acceso al estacionamiento común destinado para el área en la que se encontraba ubicada la propiedad administrada por DICAMAR. Arguyeron que, luego del paso del huracán María, la Sucesión Parés Más construyó un muro de poca altura sobre el cual ubicó la verja de alambre y puso un candado al mencionado portón, cerrando así el acceso al lote de estacionamiento común. Según adujeron, la Sucesión Parés Más había prohibido o limitado indebidamente el acceso de sus empleados y clientes, así como los de otros negocios, al lote de terreno destinado a estacionamiento común para uso de todos los locales del área. Plantearon que, a pesar de los requerimientos hechos, incluyendo la radicación de una acción contra Marcano's Pizza Palace #6, la Sucesión Parés Más mantenía el portón cerrado con candado, limitando así el acceso para el estacionamiento.

De igual forma, los recurridos sostuvieron en su acción que, al otro lado del callejón estaba ubicada la finca número 9773, perteneciente a RAFISO, la cual también colindaba con un lote destinado al estacionamiento común de vehículos que le pertenecía a Long Construction. Adujeron que, al igual que sucedió con el lote ubicado en la parte posterior del negocio Marcano's Pizza Palace #6, RAFISO instaló un portón de rejas con candado y tomó para sí el lote de terreno sin autoridad para ello. Argumentaron que, en ambos casos, no habían transcurrido los años necesarios desde los actos de posesión ejercidos por los recurridos. Arguyeron que la atribución

indebida por los peticionarios de la titularidad o posesión exclusiva de los dos lotes de terreno antes descritos, los cuales estaban destinados al uso de estacionamiento común, le habían causado daños. Explicaron que, previo a la instalación del portón en el lote ubicado detrás de la propiedad que pertenece a la Sucesión Parés Más, los empleados y clientes de los negocios aledaños, incluyendo los del Centro Quiropráctico Díaz Velázquez y del Masaje Holístico Terapéutico Healing Touch, utilizaban ese espacio para estacionar sus vehículos. Alegaron que los peticionarios, a sabiendas de su falta de titularidad, habían efectuado actos de posesión sobre esos lotes reservándolos para uso exclusivo de ellos, así como de sus empleados y clientes, ocasionándoles dificultades y daños, pues les habían privado indebidamente a sus clientes y empleados la utilización de esos dos lotes para estacionar los vehículos de estos.

En virtud de lo anterior, los recurridos solicitaron, en lo pertinente, el cese y desista a los peticionarios de continuar limitando y prohibiendo el uso de los lotes de terreno destinados a estacionamiento común. Asimismo, solicitaron que se les ordenara a los peticionarios a abrir los portones instalados en ambos lotes de estacionamiento de uso común y permitir que sus empleados y clientes utilicen dichos lotes para estacionarse, so pena de desacato. A su vez, solicitaron $250,000.00 por concepto de daños emocionales.

Por su parte, los peticionarios presentaron sus alegaciones responsivas, respectivamente.[3] En esencia, negaron las alegaciones en su contra y alegaron, en lo pertinente, que adquirieron los referidos lotes por usucapión extraordinaria. A su vez, presentaron

---

[3] Apéndice del recurso, págs. 76-103.

una reconvención en contra de los recurridos, a la cual estos replicaron.[4]

Luego de varios trámites procesales, el 30 de marzo de 2023, la parte peticionaria instó una *Moción en Solicitud de Sentencia Sumaria Parcial*.[5] En síntesis, indicó que el petitorio iba dirigido únicamente a la controversia sobre el alegado derecho de uso del estacionamiento en el lote que colindaba con las propiedades de RAFISO y de la Sucesión Parés Más. Argumentaron que el plano de inscripción de la urbanización Caparra Terrace para el área en cuestión demostraba que el lote de estacionamiento era originalmente una sola área que fue dividida por un paseo peatonal. Detalló que tanto RAFISO como la Sucesión Parés Más tenían propiedades que colindaban con las porciones de los lotes luego de la división del paseo peatonal, lo cual produjo dos lotes de estacionamiento que le sirven a las propiedades de ambos. Arguyó que, de una interpretación del plano de inscripción de la urbanización Caparra Terrace surgía que los predios de estacionamiento objeto de la acción de epígrafe solo servían a los lotes comerciales designados así por Long Construction cuando sometió dicho plano al Registro de la Propiedad. Según adujo, el lote administrado por DICAMAR no fue designado como comercial sino como residencial, junto a los demás diecinueve (19) lotes residenciales que componían el Bloque KA de la mencionada

---

[4] Íd., págs. 45-54.

[5] Apéndice del recurso, págs. 121-697. Junto a su petitorio, los peticionarios presentaron los siguientes documentos: (1) copia de la Escrita Número 13 sobre permuta de bienes inmuebles por acciones corporativas, suscrita el 12 de noviembre de 2020; (2) copia del plano de inscripción en el Registro de la Propiedad de la propiedad sita en la urbanización Caparra Terrace; (3) copia de la Escritura Núm. 10 sobre compraventa, suscrita el 6 de abril de 2021; (4) copia de la Escritura Núm. 12 sobre compraventa, suscrita el 3 de agosto de 2005; (5) copia del *Testamento Abierto* de Carmen Parés Más, suscrito el 13 de noviembre de 2006; (6) copia del *Contrato de Arrendamiento de Propiedad Inmueble con Equipos*, suscrito el 5 de enero de 2021; (7) copia de la *Deposición* del doctor Jorge A. Díaz Martínez, celebrada el 21 de octubre de 2022; (8) copia de la *Deposición* de la doctora Glenda Velázquez Santiago, celebrada el 21 de octubre de 2022; (9) copia de la *Deposición* de Gladys A. Díaz Martínez, celebrada el 28 de octubre de 2022; (10) copia de la *Deposición* de Tamara L. Díaz Martínez, celebrada el 28 de octubre de 2022; (11) copia del *Plano de Enmienda Estacionamiento de Lotes Comerciales*.

urbanización. Sostuvieron que, de ninguna forma, los recurridos tenían un alegado derecho de uso que Long Construction les hubiera conferido para estacionar en su propiedad privada. En vista de ello, solicitó que se declarara Ha Lugar su petitorio sumario parcial a los efectos de determinar que los recurridos no eran acreedores de un derecho de uso de la propiedad privada objeto del presente caso.

Por su parte, el 1 de mayo de 2023, la parte recurrida se opuso.[6] En esencia, sostuvo que existían hechos medulares en controversia que impedían la resolución sumaria del asunto planteado por los peticionarios. Según adujo, en la propia solicitud de sentencia sumaria parcial, los peticionarios reconocieron que el derecho de estos para reclamar la concesión del remedio en cuestión provenía de los Artículos 2 y 4 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 5312 y 5314; en particular, "la costumbre" que es una de las fuentes del derecho reconocidas en el nuevo Código Civil. Argumentó que no había duda de que existía una norma de derecho que la amparaba en los reclamos que se hicieron en la acción de epígrafe. De igual forma indicaron que los peticionarios también admitieron que existía controversia en cuanto a que el uso previo de los lotes de estacionamientos fuera, en efecto, su costumbre. En ese sentido, alegaron que, según las admisiones de los propios peticionarios, existía controversia en cuanto a que estos se habían estacionado en los predios de Long Construction por "uso y costumbre" durante todo el tiempo y circunstancias declaradas bajo juramento. En virtud de lo anterior, solicitó que se declarara No Ha Lugar la solicitud de sentencia sumaria promovida por los peticionarios.

---

[6] Apéndice del recurso, págs. 698-745. Los recurridos incluyeron en su moción los siguientes documentos: (1) copia de la Escritura Núm. 61 sobre compraventa, suscrita el 4 de noviembre de 1977; (2) copia del *Certificado de Propiedad Inmueble* de la finca número 9773, con fecha del 25 de mayo de 2021; (3) copia del *Certificado de Propiedad Inmueble* de la finca número 9775, con fecha del 25 de mayo de 2021.

Evaluadas las posturas de las partes, el 12 de marzo de 2025, el Tribunal de Primera Instancia emitió y notificó la *Resolución* que no ocupa, mediante la cual declaró No Ha Lugar el petitorio sumario parcial presentado por la parte peticionaria.[7] En particular, el foro primario desglosó los hechos estipulados por las partes, los hechos que no estaban en controversia y los que sí lo estaban:

## II.    ESTIPULACIONES DE HECHOS

1. El 22 de abril de 1957, el Dr. Fernando Díaz Canales (Q.E.P.D.) ("Dr. Díaz Canales"), padre de los demandantes Sra. Tamara L. Díaz Martínez, Sra. Gladys Díaz Martínez y el Dr. Jorge Díaz Martínez, adquirió mediante compraventa la Finca #2,269, ubicada en Caparra Terrace e identificada con el número 1270 de la Avenida Central, también conocida como la Avenida Jesús T. Piñero.

2. Al presente, la Finca #2,269, donde ubica el edificio 1270, pertenece a, y es administrada por, la parte demandante Dicamar Corp. ("Dicamar"), entidad que la adquirió el 23 de noviembre de 2020 mediante permuta.

3. La Finca #9775 y el edificio ubicado en la misma desde donde opera "Marcano's Pizza Palace #6", pertenecen a los codemandados Arturo Acevedo Parés y Arturo Rafael Acevedo Vázquez (en adelante los "Acevedo") desde el 20 de noviembre de 2018.

4. Antes de que la Finca #9775 y el edificio ubicado en la misma perteneciera a los Acevedo, esa propiedad pertenecía a la Sra. Carmen Parés Más ("Sra. Parés Más"), madre del codemandado Arturo Acevedo Parés.

5. La Sra. Parés Más adquirió la Finca #9775 y el edificio ubicado en la misma, identificado con el número 1274 de la Avenida Central, el 3 de agosto de 2005 mediante compra al Sr. Francisco Marcano Vázquez, quien a la fecha en que ocurrió esa compraventa era dueño de dicha propiedad.

6. Al Sur de la propiedad identificada como la Finca #9775, ubicada en el número 1274 de la Avenida Central y que hoy pertenece a los Acevedo, hay un predio o lote de terreno cuyo titular registral es Long Construction Company ("Long Construction").

7. Por el lado Oeste de la Finca #9775 propiedad de los Acevedo, entre el negocio "Marcano's Pizza Palace #6" y una estación de gasolina que hace esquina con la Avenida Central y la Avenida De Diego, hay un paseo o callejón cuyo titular registral también es Long Construction, según surge de la descripción de las Fincas #9774 y #9775 que obra en el Registro de la Propiedad.

8. La Finca #9773 pertenece a Rafiso Investment LLC ("Rafiso"), quien la adquirió de H. Díaz Santini & Co., Inc. el 6 de abril de 2021.

---

[7] Apéndice del recurso, págs. 761-775.

9. Al Este de la propiedad identificada como la Finca #9773, que hoy pertenece a Rafiso, hay un predio o lote de terreno cuyo titular registral es Long Construction.

## III.  HECHOS QUE NO ESTÁN EN CONTROVERSIA

1. La entidad Long Construction, aquí demandada y en rebeldía, fue cancelada en virtud de la Ley General de Corporaciones de Puerto Rico el 16 de abril de 2014. Véase, SUMAC Núm. 118, Anejo 4 – Certificado de Revocación de la Demanda Enmendada presentada por Dicamar el 13 de septiembre de 2022.

2. Dicamar es la titular registral de la Finca #2,269 ubicada en el número 1270 de la Avenida Central de la Urbanización Caparra Terrace del Municipio de San Juan. Véase, SUMAC Núm. 184, Exhibit 1 – Escritura Núm. 61 de Compraventa otorgada el 4 de noviembre de 1977.

3. La Finca #9,773 perteneciente a Rafiso está descrita registralmente de la siguiente manera:
   URBANA: Solar sito en el Barrio Monacillo de la municipalidad de San Juan, antes Río Piedras, marcado con el número dos (2) del bloque comercial "KAC2" de la de la[*sic*] Urbanización Caparra Terrace, con un área superficial de doscientos setenta y cinco (275.00) metros cuadrados. En lindes por el Norte, en una extensión de veinte (20) metros, con un paseo o callejón de entrada de seis (6) metros de ancho, propiedad de Long Construction Company; por el Sur, con el solar número uno (1) del bloque comercial KAC2 de la Urbanización Caparra Terrace; por el Este, con área propiedad de Long Construction Company destinada a estacionamiento de vehículos; por el Oeste, que es su frente, con la calle denominada Main Street de la Urbanización[*sic*] de la Urbanización Caparra Terrace, hoy Avenida de Diego.

   Hay construido en el solar un Edificio Comercial y residencial de Hormigón y Bloques de Tres.

   Consta inscrita al folio cuarenta y dos (42) y cuarenta y cuatro (44), del Tomo doscientos cincuenta y siete (257) de Monacillos, Sección Tercera del Registro de la Propiedad de San Juan, finca número nueve mil setecientos setenta y tres (9,773), inscripciones primera (1ra) y quinta (5ta).

   Número de catastro: 086-007-261-23-001. Véase SUMAC Núm. 184, Exhibit 2 – Certificación Registral de la Finca #9773.

4. La Finca #9,775 y perteneciente al Sr. Acevedo Parés y al Sr. Acevedo Vázquez contiene la siguiente descripción registral:

   URBANA: Solar sito en el Barrio Monacillo de la municipalidad de San Juan, antes Río Piedras, marcado con el número cuatro (4) del Bloque

Comercial "KA" guion Cdos (KA-C2) de la de la[*sic*] Urbanización Caparra Terrace, con un área superficial de TRESCIENTOS SESENTA Y CINCO METROS CUADRADOS (365mc); en lindes por el NORTE, que es su frente con la Avenida Central de la Urbanización Caparra Terrace; por el SUR, con área propiedad de Long Construction Company, destinada al estacionamiento de vehículos; por el ESTE, en una extensión de veinte metros (20m) con el solar número seis (6) la manzana KA de la Urbanización Caparra Terrace, propiedad de Lane Corporation y por el OESTE, en una extensión de veinte metros (20m) con un paseo o callejón de entrada de seis metros de ancho propiedad de Long Construction Company.

Dicha propiedad consta inscrita al Folio Trece (13) del Tom[o] Seiscientos Diecisiete (617) de Monacillos, Finca Número Nueve Mil Seiscientos Setenta y Cinco (9,775), Inscripción Décimo Quinta (15ta.) de la Sección Tercera del Registro de la Propiedad de San Juan. Véase, SUMAC Núm. 184, Exhibit 3 – Certificación Registral de la Finca #9775.

5. El codemandado, Marcano, en su carácter personal, es quien opera y administra el negocio "Marcano's Pizza Palace #6", ubicado en el local número 1274 de la Finca #9,775. Véase SUMAC Núm. 166, Anejo 6 – Contrato de Arrendamiento de Propiedad Inmueble con Equipos. Véase también, SUMAC Núm. 18, Demanda Enmendada, págs. 4-5, párr. 3 presentada por Dicamar el 13 de septiembre de 2022, y SUMAC Núm. 133, Contestación a demanda enmendada, pág. 3, párr. 3 presentada por Marcano el 28 de octubre de 2022.

6. El 5 de enero de 2021, Marcano, —en función de arrendatario— y el Sr. Acevedo Parés, —en función de arrendador— suscribieron el Contrato de Arrendamiento de Propiedad Inmueble con Equipos y acordaron que este tendría un término de tres años con extensiones cada tres años por mutuo acuerdo y por escrito con los ajustes que el Sr. Acevedo Parés entienda necesarios. Id.

## IV. HECHOS QUE PREVALECEN EN CONTROVERSIA

1. La fecha y momento exacto en que se limitó y/o restringió el acceso a los lotes de estacionamiento pertenecientes a Long Construction.
2. La intención de Long Construction conforme al uso de los lotes de estacionamiento en controversia.
3. El uso y costumbre que se le ha dado a los lotes de estacionamiento en controversia por los pasados años.
4. Si Dicamar tiene o no un derecho de uso de los lotes de estacionamientos cuyo dueño registral es Long Construction.
5. Si el uso y costumbre por los pasados cuarenta y cinco años ha convertido la Finca #2,269 en una finca con fines comerciales y con derecho al uso de

los lotes de estacionamientos cuyo dueño registral es Long Construction.

El foro *a quo* determinó que existían elementos subjetivos o factores de credibilidad que ameritaban la celebración de un juicio plenario. En esencia, concluyó que persistían hechos medulares en controversia que impedían la resolución sumaria parcial, particularmente en cuanto a la intención de Long Construction, el uso y costumbre que se le ha dado al lote en cuestión por los pasados años y quién o quiénes podrían usar el terreno en controversia.

En desacuerdo, el 27 de marzo de 2025, la parte peticionaria presentó una moción de determinaciones de hechos adicionales y reconsideración,[8] a la cual los recurridos se opusieron el 1 de mayo de 2025.[9] Atendida la referida solicitud, el 6 de mayo de 2025, notificada al día siguiente, el foro de origen la declaró No Ha Lugar.[10]

Inconforme con dicha determinación, el 29 de mayo de 2025, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL POR INSUFICIENCIA DE LA PRUEBA CUANDO LOS DEMANDANTES NO CUENTAN CON PRUEBA PARA DEMOSTRAR EL DERECHO DE USO DE PROPIEDAD PRIVADA QUE NO LES PERTENECE.

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR HECHOS QUE NO SE SOSTIENEN CON LA PRUEBA QUE OBRA EN EL EXPEDIENTE Y AL NEGARSE A REVISARLOS CONFORME LE FUE SOLICITADO POR MEDIO DE UNA MOCIÓN DE RECONSIDERACIÓN.

En cumplimiento con nuestra *Resolución* del 4 de junio de 2025, la parte recurrida compareció mediante *Oposición a "Petición de Certiorari"* el 23 del mismo mes y año.

---

[8] Apéndice del recurso, págs. 776-794.
[9] Íd., págs. 795-809.
[10] Íd., págs. 810-811.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias

en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una

lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así

lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez*

*Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en

contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 80 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.,* supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de

sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea en su primer señalamiento de error que el Tribunal de Primera Instancia erró al denegar la solicitud de sentencia sumaria parcial por insuficiencia de la prueba cuando los recurridos no cuentan con prueba para demostrar el derecho de uso de propiedad privada que no les pertenece. Como segundo y último señalamiento de error, sostiene que el foro primario incidió al determinar hechos que no se sostienen con la prueba que obra en el expediente y al negarse a revisarlos conforme le fue solicitado por medio de una moción de reconsideración.

Hemos evaluado el recurso de epígrafe conforme exige la normativa antes expuesta con particular atención a los criterios que le corresponde utilizar al Tribunal de Apelaciones al momento de revisar determinaciones del foro de instancia, según *Meléndez González et al. v. M. Cuebas,* supra. Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de sentencia sumaria parcial promovida por la parte peticionaria, ello a fin de que podamos

soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar *de novo* los documentos que nos ocupan, coincidimos con que, al adjudicar el asunto, el Tribunal de Primera Instancia actuó de conformidad con las normas que prevalecen en la materia que atendemos. Ello, nos hace concluir que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones